HOMESTEAD ICE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Dockets Nos. 17500, 17855. Promulgated October 17, 1929.

*Harry A. Jones, Esq.*, for the petitioner.
*J. E. Marshall, Esq.*, for the respondent.

OPINION.

MURDOCK: The petitioner offered certain evidence to prove that at its incorporation the tangible property paid in by Woodside for stock of the par value of $110,000, had an actual cash value of $110,000. It also offered evidence to prove that Woodside transferred certain good will including the trade name of " Homestead Ice Company " as consideration for the petitioner's mortgage of $50,000, and that this consideration for the mortgage was real and ample and had never previously been transferred by Woodside to the petitioner. The only effect of this latter transaction, however, upon invested capital would be that the cost of the asset would have to be considered in determining the amount of earned surplus which the corporation might have at any particular time. Except as set out in our findings of fact, we do not know how the Commissioner computed any earned surplus for the petitioner, and we certainly have not been shown that he made any improper use of this mortgage or the good will item in his computation of the petitioner's invested capital for any of the years involved.

After a careful study of the petitioner's allegations of error and the Commissioner's answer, together with a consideration of any additional information as to the issue in this case which we might get from the statements of counsel, we are of the opinion that the real issue in this case is, *What was the petitioner's invested capital for the various years?* If we were satisfied that the actual cash value of the assets paid in by Woodside for stock in July, 1914, was $110,000, then, as a result of that transaction, $110,000 would be the starting point for the computation of the petitioner's invested capital; but the Commissioner has determined that in the taxable years

the petitioner had capital stock outstanding in the amount of $25,000 only. Why or how he made this determination we do not know, but neither do we know that the capital stock outstanding in the taxable years was in excess of $25,000 par value. The issue, as drawn, would require proof of all facts necessary to the computation of invested capital by taking the original invested capital resulting from the actual cash value of the property paid in for stock as it was affected by all subsequent changes up to and including each of the years involved herein. We have not been told what happened after the events of 1914 as set forth in our findings of fact, nor what were the facts in the taxable years on which the computation of invested capital would depend. Consequently, we are unable to say what the petitioner's invested capital should be for the years here in question.

In July, 1914, Woodside had the petitioner incorporated in Delaware. The minutes of the first meeting of the incorporators which was held in Wilmington, Del., were put in evidence. In those minutes the following appears:

Upon motion, duly made and seconded, and by the affirmative vote of all present, the following preambles and resolutions were adopted:

WHEREAS, Robert Woodside has offered to sell to this Company property as follows: [Here follows the description of the property as in the agreement of July 23, 1914, in our findings of fact] in consideration of the issue of stock of this Company to the amount of One Hundred Ten Thousand Dollars ($110,000) par value, and

WHEREAS, it appears to the stockholders that such property is necessary for the business of this Company, and that the same is of the value of One Hundred Ten Thousand Dollars ($110,000) ;

RESOLVED, That the Board of Directors of this Company be and they are hereby authorized and directed to purchase the property above mentioned for the said price and to issue said stock in payment therefor; Provided, that, in the judgment of the Board of Directors, the said property is of the value above stated.

These incorporators, so far as the record shows, were entirely unacquainted with either Woodside's business or the value of the property he proposed to transfer to the corporation. After holding this meeting all but one of them dropped out of the affairs of the corporation by transferring their subscriptions to Woodside, and that one, named Townsend, merely held three shares of stock as Woodside's nominee from July 23, 1914, until some time on or before October 5, 1914, when he transferred the three shares to Woodside. He was named a director but was not present on July 23, 1914, at the first meeting of the board of directors. So far as we know, he took no part in the affairs of the corporation after the meeting of the incorporators above mentioned.

The minutes of the first directors' meeting which was held in Homestead, Pa., were also put in evidence. These minutes show that R. Woodside, G. E. Woodside and C. H. Dyer were the directors present and that a motion as follows was carried:

RESOLVED, That this Company accept the offer of Robert Woodside to sell to this Company the property described in the resolution of the stockholders passed July 18, 1914, authorizing the purchase, and the Board of Directors do hereby adjudge and declare that said property is of the fair value of One Hundred Ten Thousand Dollars and that the same is necessary for the business of this Company.

A so-called inventory was also put in evidence. It was a list of a number of items of real and personal property with an amount opposite each item which amounts totaled $107,187.57. Forsythe testified that Woodside turned over this inventory to the five purchasers of his stock at the time they purchased the stock or within a short time thereafter, and that in his opinion, the values shown were "fair and reasonable." The evidence above discussed was obviously introduced for the purpose of showing that the value of the property paid in to the petitioner by Woodside was substantially equal to the par value of the stock issued therefor to him. However, we see that Woodside sold all of his stock in the corporation on or about September 15, 1914, to Forsythe and his four associates for $25,000. This appears to have been an arm's length transaction between people in a position to know the values of the various elements involved. Woodside came out of this transaction with $25,000 in cash and a mortgage for $50,000, in place of the assets which he had just transferred to the petitioner and which the petitioner and some of its witnesses would have us believe were worth $160,000. Shortly after this transaction, two of the five purchasers of Woodside's stock, who were then officers of the petitioner, filed a sworn statement with the Auditor General of Pennsylvania for the purpose of fixing the bonus to be paid by the corporation for the privileges of doing business in the State, to the effect that the capital employed in Pennsylvania was $75,000.

In this state of the record we are unwilling to hold that the actual cash value of the property paid in by Woodside for stock was in excess of $25,000, because we do not know what it was worth. If, perchance, the Commissioner has determined that property of the actual cash value of $25,000 was paid in to the petitioner for the capital stock outstanding in each of the taxable years, and in ths way arrived at the $25,000 of invested capital as set forth in his deficiency notices, we can not say that he was in error.

*Judgment will be entered for the respondent.*